IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAIʻI<br><br>Plaintiff,<br><br>vs.<br><br>N.D.,<br>by and through his Parents, L.D. and M.D. et al.,<br><br>Defendants. | CV. NO. 10-00297 AWT-BMK<br><br>FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE BE REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER |

FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE
HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE BE
REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER

Plaintiff State of Hawaiʻi Department of Education ("DOE") appeals an Administrative Hearings Officer's ("Hearings Officer") Findings of Fact, Conclusions of Law and Decision ("Decision"), rendered pursuant to Hawaii Administrative Rules ("HAR") Title 8, Chapter 56.[1] (Decision, Doc. # 42 Ex. A at

---

[1] HAR Title 8 Chapter 56 was repealed in November of 2009 and renumbered in HAR Title 8 Chapter 60. Chapter 56 was repealed prior to the administrative hearing in this case, but subsequent to the imposition of school furloughs. It is unnecessary to decide which iteration of the administrative rules applies because the parties have not shown, and the Court has not found, any material difference between the provisions of the Individuals with Disabilities Education Act, HAR Title 8 Chapter 56, and HAR Title 8 Chapter 60 for the purposes of this case.

1

9.) The Hearings Officer concluded that the State's furlough program unilaterally changed N.D.'s educational program and constituted a material failure to implement his individualized education program ("IEP"). (Id. at 9-12.) For the following reasons, the Court FINDS and RECOMMENDS that the Hearings Officer's Decision be REVERSED and the case be REMANDED for further proceedings consistent with this opinion.

## BACKGROUND

The following facts were established by the Hearing Officer's Decision and were not specifically disputed on appeal. N.D. is a six year old boy with autism. (Id. at 3, ¶ 1.) The behavior intervention specialist opined that N.D. requires consistency and repetition to learn. (Id. at 4, ¶ 10.) N.D.'s Individualized Education Program ("IEP") provided him with the following services: 1830 minutes per week of special education, 540 minutes of speech-language therapy per quarter, and 40 minutes of occupational therapy services per quarter. (Id. at ¶ 13.) The IEP also provided N.D. opportunities to interact with his peers during recess, selected classroom activities, and school wide events. (Id. at 5, ¶ 15.) At the time N.D.'s parents agreed to the IEP, the DOE had not yet implemented furloughs. (Id. at ¶ 19.)

In October of 2009, furloughs were implemented due to the State's

budget problems. (Id. at ¶ 22.) On furlough days, the school that N.D. attended ("Home School") was closed and neither general nor special education students attended. (Id.) After furloughs were implemented, Mother and other witnesses observed that N.D.'s behavior deteriorated. (Id. at 5-6, ¶¶ 23-30.) In response to furloughs, the principal testified that on October 29, 2009 and December 17, 2009, the DOE offered to extend N.D.'s services on Mondays through Thursdays. (Id. at 8, ¶ 46.) The DOE also offered to provide N.D. with a behavioral intervention support specialist and skills trainer services on furlough Fridays, but the parents rejected these offers. (Id.) Instead, Mother hired a skills trainer to provide home services for N.D. on furlough days. (Id. at ¶ 45.)

On October 20, 2009, N.D., along with other plaintiffs, filed a complaint seeking to halt the furloughs. N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dept. of Educ., 600 F.3d 1104, 1108 (9th Cir. 2010). The students alleged that the DOE had violated the stay put provision of the Individuals with Disabilities Education Act ("IDEA"), which requires that the child remain in his current educational placement during the pendency of the proceedings. Id.; see 20 U.S.C. § 1415(j) (2006). District Judge David A. Ezra denied the motion for a temporary injunction. Id. Judge A. Wallace Tashima later denied the students' motion for a preliminary injunction. Id. at 1108-09. The students appealed, and

the Ninth Circuit affirmed the district court's denial of the students' motion for preliminary injunction. Id. at 1117.

On March 1, 2010, an administrative hearing was held in the instant case before the Office of Administrative Hearings. (Decision, Doc. # 42 Ex. A at 3.) On April 20, 2010, the Hearings Officer issued the Decision, concluding in relevant part that: 1) the analysis in Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J, 502 F.3d 811, 822 (9th Cir. 2007) is not applicable, because the issue in the case is whether furloughs unilaterally changed N.D.'s educational program; 2) furloughs unilaterally changed N.D.'s educational program; and 3) even assuming Van Duyn is applicable, the DOE materially failed to implement N.D.'s IEP.[2] (Id. at 9-12.)

The DOE subsequently appealed to this Court, asserting in relevant part that the Hearings Officer erred by concluding that the DOE unilaterally modified N.D.'s IEP and that the DOE materially failed to implement N.D.'s IEP. (Opening Br. at 18-19.) This Court FINDS and RECOMMENDS that the Hearings

---

[2] The Hearings Officer also concluded that the furlough Friday plan did not violate N.D.'s right to be educated in the least restrictive environment and that N.D. was not entitled to compensatory education. (Decision, Doc # 42 Ex. A at 13-14.) N.D. did not raise the issue of whether he was educated in the least restrictive environment in his Responsive Brief. (Responsive Br. at 6-25.) Additionally, in light of the Court's conclusion that the Hearings Officer failed to properly apply the test to determine whether the DOE materially failed to implement the IEP, it is unnecessary to address the issue of compensatory education.

Officer's Decision be REVERSED and REMANDED because: 1) the DOE's implementation of furloughs did not constitute a unilateral change in N.D.'s educational program; and 2) the Hearings Officer failed to properly apply Van Duyn, 502 F.3d at 822.

## STANDARD OF REVIEW

"In an action challenging an administrative decision, the IDEA provides that 'the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" Ojai Unified School Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993) (quoting 20 U.S.C.A. § 1415(e)(2) (West 1990)). When reviewing state administrative decisions, "courts must give 'due weight' to judgments of education policy" and are not empowered to "substitute their own notions of sound educational policy for those of the school authorities which they review." Id. at 1472 (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987) (internal quotation marks omitted)). "How much deference to give state educational agencies, however, is a matter for the discretion of the courts[.]" Id. (quoting Gregory K., 811 F.2d at 1311) (internal quotation marks omitted). Deference to a hearing officer's findings is warranted where the findings are

5

"thorough and careful." See J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 949 (9th Cir. 2010) (quoting JG v. Douglas County School Dist., 552 F.3d 786, 793 (9th Cir. 2008)).

## DISCUSSION

One purpose of the IDEA is to provide children with disabilities a Free Appropriate Public Education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). A FAPE is "special education and related services" that, in part, "are provided in conformity with the individualized education program required under section 1414(d) of this title." Id. § 1401(9) (emphasis added). Under § 1414(d), "every disabled child must have an IEP drafted and put into effect by the local educational authority." Van Duyn, 502 F.3d at 818. The IEP is formulated by a team including the child's parents, regular and special education teachers, and other individuals with relevant experience. Id. (citing § 1414(d)(1)(B)). The IEP addresses "the child's present level of academic achievement, annual goals for the child, how progress toward those goals is to be measured and the services to be provided to the child." Id. (citing § 1414(d)(1)(A)(i)). The child's parents are entitled to participate in any meetings regarding the IEP, and must receive prior written notice of any proposed changes in the IEP. Id. (citing § 1415(b)(1) & (3)). Under the IDEA, the child is entitled to have an education implemented in

6

conformity with the IEP.

The Hearings Officer concluded that the analysis in <u>Van Duyn</u> was not applicable and that "furloughs caused [N.D.]'s program to change." (Decision, Doc. # 42 Ex. A at 12.) The Hearings Officer erred by concluding that the DOE unilaterally modified N.D.'s educational program, because the Ninth Circuit has rejected that position. In <u>N.D.</u>, the plaintiffs argued that "because their current IEPs are their current educational placement and assume a five day school week, the reduction of the school week constitutes a change in the general educational program of the student." 600 F.3d at 1117. The Ninth Circuit held that furloughs did not constitute a change in the educational program of the students because, while the IEPs assume five day weeks, they also assume some four day weeks for holidays. <u>Id.</u> The Ninth Circuit held that the "four day weeks created by the furloughs are no different and do not constitute changes in N.D.'s educational program." <u>Id.</u> This holding disposes of N.D.'s argument that the imposition of furloughs constituted a change in his educational program. See <u>S.M. v. Hawai'i Dept. of Educ.</u>, 2011 WL 1527068, at *9 (D. Haw. Apr. 20, 2011) (holding that <u>N.D.</u> "forecloses any argument that the State of Hawai'i's decision to implement furloughs, in general, constituted a denial of a free appropriate public education to Student."). Instead, the Ninth Circuit held that students impacted by furloughs

7

could bring a claim for material failure to implement the IEP, and that a "school district's failure to provide the number of minutes and type of instruction guaranteed in an IEP could support a claim of material failure to implement an IEP." N.D., 600 F.3d at 1117. Thus, the DOE did not change N.D.'s educational program by implementing furlough Fridays.

The Hearings Officer also erred by concluding that the DOE materially failed to implement N.D.'s IEP. The Court FINDS that the Hearings Officer failed to apply Van Duyn properly. In Van Duyn, the Ninth Circuit held that a "material failure to implement an IEP" violates the IDEA. 502 F.3d at 822. The Ninth Circuit explained that a material failure occurs when "there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." Id. A child's educational progress is probative of whether a material failure to implement the IEP occurred. Id. Under Van Duyn, the administrative agency evaluating a claim for material failure to implement the IEP must contrast the education the child is receiving with the education the child is entitled to under the IEP, and determine whether the shortfall is material. See N.D., 600 F.3d at 1117 ("A school district's failure to provide the number of minutes and type of instruction guaranteed in an IEP could support a claim of material failure to implement an IEP."); Wilson v. District of Columbia,

770 F. Supp.2d 270, 275 (D.D.C. 2011) ("Rather, courts applying the materiality standard have focused on the proportion of services mandated to those actually provided, and the goal and import (as articulated in the IEP) of the specific service that was withheld.") (citing Van Duyn, 502 F.3d at 822) (some citations omitted).

In this case, the Hearings Officer misapplied Van Duyn by concentrating on the effects of the furloughs in general instead of focusing on whether the DOE materially failed to implement the IEP. The Hearings Officer focused on the effect of scheduling changes on N.D.'s behavior. (Decision, Doc. # 42 Ex. A at 10-12.) However, when determining that the DOE materially failed to implement the IEP, the Hearings Officer failed to meaningfully analyze whether the DOE complied with specific provisions of the IEP. For instance, the Hearings Officer failed to make specific findings or conclusions as to whether N.D. received all of the instructional time in the IEP and whether the difference was a material failure. (See id. at 3-8, 9-12.) To properly apply the Van Duyn standard, the Hearings Officer must analyze whether the DOE failed to implement specific provisions of N.D.'s IEP. See Van Duyn, 502 F.3d at 822. If the DOE has failed to implement specific provisions of N.D.'s IEP, the Hearings Officer must decide whether the failure was material. Id. In doing so, the Hearings Officer is required to determine whether "there is more than a minor discrepancy between the services

a school provides to a disabled child and the services required by the child's IEP." Id. In this case, the Hearings Officer must determine whether the DOE materially failed to implement specific provisions of N.D.'s IEP despite its efforts after furloughs began. If the DOE has failed to comply with specific provisions of the IEP, the Hearings Officer should analyze the ramifications of the DOE's offer to provide N.D. with services on furlough Fridays. When assessing whether the DOE materially failed to implement N.D.'s IEP, the Hearings Officer did not perform the foregoing analysis. Therefore, the Hearings Officer erred by failing to apply the Van Duyn standard to the facts of this case. While the Court sympathizes with the parents because of the problems created by furloughs in general, Van Duyn requires a more rigorous analysis of whether the State, despite its efforts after furloughs began, materially failed to implement specific provisions of N.D.'s IEP. Therefore, the Court FINDS and RECOMMENDS that the Hearings Officer's Decision be REVERSED and that the case be REMANDED to the Hearings Officer to consider the application of Van Duyn.[3]

---

[3] In light of this conclusion, it is unnecessary to address N.D.'s remaining claim regarding prior written notice because 20 § U.S.C. 1415(b)(3)(A) and HAR § 8-56-68(a)(1) require a change in the educational placement or provision of a FAPE to the child to trigger the DOE's obligation to provide notice. See HAR § 8-56-68(a)(1) (requiring written notice when the department proposes "to initiate or change the . . . educational placement of the student or the provision of a free appropriate public education to the student"); 20 § U.S.C. 1415(b)(3)(A) (same).

CONCLUSION

For the foregoing reasons, the Court FINDS and RECOMMENDS that the case be REVERSED and REMANDED to the Hearings Officer to consider the application of <u>Van Duyn</u>.

DATED: Honolulu, Hawaii, December 14, 2011.

IT IS SO FOUND AND RECOMMENDED.



    /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

<u>Dept. of Educ., State of Hawai‘i v. N.D. et al.</u>, Civ. No. 10-00297 AWT-BMK; FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE BE REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER